Chad Conelly, SBN 022394
**MOLEVER CONELLY PLLC**
Indian Bend Corporate Centre
8161 E. Indian Bend Road, Suite 103
Scottsdale, Arizona 85250
Telephone: 480-268-2658
cc@arizonalegal.com
Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tony Schwartzkopf,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>The GEO Group, Inc.,<br><br>　　　　　Defendant. | Case No.:<br><br><br>**COMPLAINT** |

Plaintiff alleges as follows:

## NATURE OF THE ACTION

1.　Plaintiff Tony Schwartzkopf is seeking judgment, relief and damages brought under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. and Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act ("PDA"), 42 U.S.C. § 2000e et seq., based upon the unlawful conduct of his former employer, The GEO Group, Inc., when he worked for GEO at the Arizona State Prison-Kingman in Kingman, Arizona.

2.　GEO violated the ADA and the PDA by retaliating against Tony Schwartzkopf based on his wife, Kristin Schwartzkopf's, protected activity, and Tony Schwartzkopf's participation in, or GEO's perception that he participated in, his wife's protected activities and for his opposing of GEO's unlawful, discriminatory conduct.

**PARTIES, VENUE, AND JURISDICTION**

3. Tony Schwartzkopf is, and at all relevant times was, a resident of Mohave County, Arizona.

4. Defendant The GEO Group, Inc. (hereinafter referred to as "GEO") is a Florida-based company that does business in Mohave County, Arizona.

5. During the events at issue in this case, GEO managed the Arizona State Prison-Kingman in Kingman, Arizona.

6. The events at issue in this case occurred in Mohave County, Arizona.

7. This Court has subject matter jurisdiction over this dispute.

8. This Court has jurisdiction over Plaintiff's ADA claims under 28 U.S.C. § 1331 and 42 U.S.C. § 12101 et seq. and Plaintiff's PDA claims under 28 U.S.C. § 1331 and 42 U.S.C. 2000e et seq. (federal question within this Court's jurisdiction).

9. This Court has personal jurisdiction over the parties.

10. Venue in this Court is proper.

**GENERAL ALLEGATIONS**

11. Tony Schwartzkopf worked at the Arizona State Prison-Kingman in Kingman, Arizona (hereinafter referred to as "the Prison").

12. Upon information and belief, effective December 1, 2015, GEO was awarded a contract to assume management of the Prison.

13. When GEO took over management of the Prison, Tony Schwartzkopf was working at the Prison as a Chief of Security.

14. At the same time, Tony Schwartzkopf's wife, Kristin Schwartzkopf, was working at the Prison as the Human Resources Manager.

15. When GEO took over management of the Prison, GEO offered Ms. Schwartzkopf the opportunity to stay employed when GEO assumed management of the Prison as the Human Resources Manager.

16. When GEO offered Ms. Schwartzkopf the opportunity to stay employed as the Human Resources Manager when GEO assumed management of the Prison, Ms.

2

1 Schwartzkopf accepted the offer and thereafter worked for GEO as the Human
2 Resources Manager of the Prison.
3     17.    During the transition period after GEO assumed management of the
4 Prison, GEO put in place a transition team to handle the transitional tasks including
5 tasks involving employee files.
6     18.    During the transition period after GEO assumed management of the
7 Prison, Ms. Schwartzkopf was not part GEO's transition team.
8     19.    During the transition period after GEO assumed management of the
9 Prison, Ms. Schwartzkopf's primary duty was to host job fairs.
10     20.    In May 2016, Ms. Schwartzkopf began reporting to Karen Broadwater,
11 Human Resources Director - Western Region.
12     21.    At that time, Ms. Broadwater reported to Alex Londono, VP, Field Human
13 Resources.
14     22.    Ms. Broadwater and Mr. Londono did not work at the Prison but would
15 occasionally visit the Prison during the time Ms. Schwartzkopf worked as the Human
16 Resources Manager there.
17     23.    While employed with GEO, Ms. Schwartzkopf informed GEO about her
18 disability.
19     24.    While employed with GEO, when Ms. Schwartzkopf was in and out of the
20 hospital numerous times, Ms. Broadwater called Ms. Schwartzkopf several times to see
21 how she was doing, and Ms. Schwartzkopf was upfront and honest with Ms. Broadwater
22 about her condition and disability – she told Ms. Broadwater that she had been diagnosed
23 with an Anxiety Disorder.
24     25.    Ms. Broadwater was not the only one at GEO that was aware of Ms.
25 Schwartzkopf's disability - others in upper management were aware of it.
26     26.    While employed with GEO, Ms. Schwartzkopf had a severe anxiety attack
27 in a department meeting and had to be rushed to the hospital by the Warden's
28 Administrative Assistant.

MOLEVER CONELLY PLLC
Indian Bend Corporate Centre
8161 E. Indian Bend Road | Suite 103
Scottsdale, Arizona 85250

3

27. Warden Wrigley sent flowers to Ms. Schwartzkopf at home after her hospitalization.

28. In August 2016, Ms. Schwartzkopf was placed on a Performance Improvement Plan that was not disciplinary in nature.

29. Ms. Broadwater assured Ms. Schwartzkopf several times that the Performance Improvement Plan was not disciplinary action, and Ms. Broadwater told Ms. Schwartzkopf the Performance Improvement Plan was a direct order from the Vice president at corporate.

30. After Ms. Schwartzkopf was placed on a Performance Improvement Plan, Ms. Broadwater had nothing negative to say about Ms. Schwartzkopf; rather, Ms. Broadwater told Ms. Schwartzkopf the department was looking good and she could tell Ms. Schwartzkopf was working hard.

31. Overall, Ms. Broadwater's communications to Ms. Schwartzkopf were positive and didn't concern any improvement needs.

32. Later in 2016, Ms. Schwartzkopf was taken off the Performance Improvement Plan.

33. When she was taken off taken off the Performance Improvement Plan, Ms. Schwartzkopf was told she was doing a wonderful job.

34. When she was taken off taken off the Performance Improvement Plan, Ms. Broadwater and Warden Wrigley told Ms. Schwartzkopf the department had never run better and that everything was corrected on the Performance Improvement Plan.

35. On December 12, 2016, Ms. Broadwater sent an email to Ms. Schwartzkopf stating, "Kristin, this is amazing. Your progress is outstanding! Great job. You understood what you needed to do, made a plan, and kept at it. Excellent work. You are appreciated...now that you have a much improved staff, the sky's the limit! Keep up the good work, and let me know how I can support you. Karen."

36. In or around February 2017, Tony Schwartzkopf was promoted to Associate Deputy Warden.

4

MOLEVER CONELLY PLLC
Indian Bend Corporate Centre
8161 E. Indian Bend Road | Suite 103
Scottsdale, Arizona 85250

37. On or about March 15, 2017, Ms. Schwartzkopf had a conference call with Ms. Broadwater and Ms. Lewis during which they told Ms. Schwartzkopf that they were happy Ms. Schwartzkopf was successful with her audit and her skills, and they were happy to see what the new year would bring. There was no discussion of any problems with her performance.

38. On or about March 22, 2017, Ms. Broadwater met with Ms. Schwartzkopf.

39. During that meeting, Ms. Broadwater told Ms. Schwartzkopf she was about to make her day bad - Ms. Broadwater said she knew Ms. Schwartzkopf had been "really sick" and in the hospital a couple of times and that Ms. Schwartzkopf was dealing with a lot of stress from that, as well as losing the two HR specialist employees to different positions at the facility and having to worry about replacing them.

40. During that meeting, Ms. Broadwater told Ms. Schwartzkopf that Ms. Schwartzkopf had great potential but that GEO was demoting her down to the position of HR Specialist so Ms. Schwartzkopf wouldn't have to worry about running a department with her medical issues because Ms. Broadwater said the Manager position Ms. Schwartzkopf had can be very stressful and, with the demotion, Ms. Schwartzkopf would have time for herself to get well.

41. During the demotion meeting, Ms. Broadwater expressly told Ms. Schwartzkopf the reason for GEO's demotion of Ms. Schwartzkopf's was due to Ms. Schwartzkopf's disability.

42. Ms. Schwartzkopf was shocked - her medical problems had never impacted her work other than the few brief times she had to be out for medical reasons and used her PTO, and Ms. Schwartzkopf had just received a positive performance evaluation and been praised for her great work by Ms. Broadwater and Sunny Lewis, Regional HR Manager.

43. During that meeting, Ms. Schwartzkopf expressed her shock and surprise about the demotion, reminded Ms. Broadwater about the praise she had received for her work, and asked about this - Ms. Broadwater hesitated and then said she believed it was

5

just best for the facility to demote her.

44. GEO prepared a memo memorializing GEO's demotion of Ms. Schwartzkopf.

45. That memo was substantively false – during the demotion meeting, Ms. Broadwater expressly told Ms. Schwartzkopf the reason for GEO's demotion of Ms. Schwartzkopf's was due to Ms. Schwartzkopf's disability. Yet, that information was not included in the memo.

46. When Ms. Broadwater gave Ms. Schwartzkopf a copy of the memo at the end of the demotion meeting, Ms. Broadwater said nothing about any of the purported performance problems addressed in the memo.

47. Ms. Schwartzkopf appealed the demotion to GEO.

48. GEO notified Ms. Schwartzkopf that her concern had been investigated and GEO was unable to conclude that any GEO policy had been violated with respect to the demotion.

49. Ms. Schwartzkopf submitted another appeal shortly thereafter, which GEO denied.

50. Ms. Schwartzkopf filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on May 22, 2017 (the "First Kristin Schwartzkopf EEOC Charge")

51. GEO learned of the First EEOC Charge sometime before July 11, 2017.

52. In March 2018, Ms. Schwartzkopf received a negative performance review that was based on false information.

53. On or about April 4, 2018, the HR Manager repositioned Ms. Schwartzkopf's desk in an unusual way.

54. Ms. Schwartzkopf felt it was a discriminatory and retaliatory act, so Ms. Schwartzkopf reported the incident to the Warden.

55. During Ms. Schwartzkopf's reporting of it in the Warden's office, which the HR Manager could see through the glass, the HR Manager opened the door quickly

6

which caused Ms. Schwartzkopf to fall into the Warden' desk, and the HR Manager yelled at Ms. Schwartzkopf.

56. Crying and upset, Ms. Schwartzkopf reminded the Warden she was pregnant (she had told him that previously) and could not be treated that way by the HR Manager.

57. The Warden said corporate would investigate the issue.

58. The Warden told Ms. Schwartzkopf to take the rest of the day off.

59. The next day, Ms. Schwartzkopf went to the Warden's office and he told Ms. Schwartzkopf she was being put in another unit.

60. After work that day, the HR Director called Ms. Schwartzkopf and said she was being put on admin leave.

61. On April 6, 2019, Tony Schwartzkopf received an email from the Director of Special Investigations for GEO accusing him of using his company-owned cell phone to photograph a workspace in the HR department, and alleging his actions were improper.

62. Tony Schwartzkopf responded the same day explaining the situation and denying any alleged wrongdoing.

63. Soon thereafter, GEO put Tony Schwartzkopf on admin leave.

64. GEO told Tony Schwartzkopf he was being put on admin leave because he had allegedly taken a photo of Ms. Schwartzkopf's desk.

65. On May 16, 2018, the Warden called Ms. Schwartzkopf and terminated her employment.

66. The Warden gave her no reason at that time for the termination.

67. GEO also terminated Tony Schwartzkopf on May 16, 2018.

68. GEO informed Tony Schwartzkopf he was terminated for, among other reasons, allegedly taking unauthorized photos in the HR department.

69. Tony Schwartzkopf filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on February 21, 2019.

7

70. On March 20, 2019, the EEOC issued a right to sue letter on Tony Schwartzkopf's EEOC Charge and he files this Complaint within 90 days of that letter.

## THIRD-PARTY RETALIATION IN VIOLATION OF
## THE AMERICANS WITH DISABILITIES ACT

71. Tony Schwartzkopf realleges each allegation set forth in this Complaint and incorporates them here by reference.

72. The ADA prohibits retaliation against someone so closely related to or associated with the person exercising his or her statutory rights that it would discourage that person from pursuing those rights.

73. Retaliation against a close relative of an individual who opposed discrimination can be challenged by both the individual who engaged in protected activity and the relative, where both are employees.

74. The ADA makes it unlawful for an employer to coerce, intimidate, threaten, or interfere with an individual exercising rights protected under the ADA.

75. Ms. Schwartzkopf took protected activity including but not limited to appealing her demotion, complaining about her demotion, filing the "First Kristin Schwartzkopf EEOC Charge", and reporting the discriminatory and retaliatory act of her desk being moved and that she believed she was being discriminated and retaliated against due to her disability.

76. Tony and Kristin Schwartzkopf are married, and both worked at GEO when Ms. Schwartzkopf engaged in protected activity.

77. Because of Ms. Schwartzkopf's protected activity, GEO took negative employment actions against Tony Schwartzkopf including putting him on admin leave and terminating him.

78. Also, GEO perceived that Tony Schwartzkopf was engaged in protected activity by allegedly taking a photo of his wife's desk after she alleged it was moved and that such conduct was discriminatory and retaliatory.

8

79. Because of Tony Schwartzkopf's perceived protected activity, GEO took negative employment actions against him including putting him on admin leave and terminating him.

80. GEO's conduct constitutes unlawful retaliation against Tony Schwartzkopf.

81. Because of GEO's unlawful actions, Tony Schwartzkopf has been damaged.

82. As a proximate result of GEO's violation of the ADA as stated in this Complaint, Tony Schwartzkopf has suffered substantial losses, including loss of earnings.

83. As a proximate result of GEO's violations of the ADA as stated in this Complaint, Tony Schwartzkopf has suffered impairment and damage to her good name and reputation.

84. As a proximate result of GEO's violations of the ADA as stated in this Complaint, Tony Schwartzkopf suffered embarrassment, humiliation and anguish, and other incidental and consequential damages and expenses.

85. The discriminatory and retaliatory conduct of GEO was outrageous and malicious, was intended to injure Tony Schwartzkopf, and was done with reckless indifference to Tony Schwartzkopf's protected civil rights, entitling Tony Schwartzkopf to an award of punitive damages.

## THIRD-PARTY RETALIATION IN VIOLATION OF THE PREGNANCY DISCRIMINATION ACT

86. Tony Schwartzkopf realleges each allegation set forth in this Complaint and incorporates them here by reference.

87. Title VII and the PDA prohibits retaliation against someone so closely related to or associated with the person exercising his or her statutory rights that it would discourage that person from pursuing those rights.

88. Retaliation against a close relative of an individual who opposed discrimination can be challenged by both the individual who engaged in protected activity and the relative, where both are employees.

9

89. Ms. Schwartzkopf took protected activity including but not limited to appealing her demotion, complaining about her demotion, filing the "First Kristin Schwartzkopf EEOC Charge", and reporting the discriminatory and retaliatory act of her desk being moved and that she believed she was being discriminated and retaliated against due to her pregnancy.

90. Tony Schwartzkopf falls within the zone of interests protected by Title VII; he is a "person aggrieved" with standing to sue GEO under Title VII based on the protected activity of his wife, Ms. Schwartzkopf.

91. Because of Ms. Schwartzkopf's protected activity, GEO took negative employment actions against Tony Schwartzkopf including putting him on admin leave and terminating him.

92. Also, GEO perceived that Tony Schwartzkopf was engaged in protected activity by allegedly taking a photo of his wife's desk after she alleged it was moved and that such conduct was discriminatory and retaliatory against her.

93. Because of Tony Schwartzkopf's perceived protected activity, GEO took negative employment actions against him including putting him on admin leave and terminating him.

94. GEO's conduct constitutes unlawful retaliation against Tony Schwartzkopf under the PDA.

95. Because of GEO's unlawful actions as stated in this Complaint, Tony Schwartzkopf has been damaged.

96. As a proximate result of GEO's violations of the PDA as stated in this Complaint, Tony Schwartzkopf has suffered substantial losses, including loss of earnings.

97. As a proximate result of GEO's violations of the PDA as stated in this Complaint, Tony Schwartzkopf has suffered impairment and damage to his good name and reputation.

98. As a proximate result of GEO's violations of the PDA as stated in this Complaint, Tony Schwartzkopf suffered embarrassment, humiliation and anguish, and

10

other incidental and consequential damages and expenses.

99. The discriminatory and retaliatory conduct of GEO was outrageous and malicious, was intended to injure Tony Schwartzkopf, and was done with reckless indifference to Tony Schwartzkopf's protected civil rights, entitling Tony Schwartzkopf to an award of punitive damages.

## JURY DEMAND

100. Tony Schwartzkopf requests trial by jury in this action.

WHEREFORE, Tony Schwartzkopf requests that the Court enter a judgment in his favor against GEO as follows:

A. For an award of Tony Schwartzkopf's damages for loss of wages, benefits, and promotional opportunities, including an award of back pay and front pay for all lost salary and benefits.

B. For an award of damages to compensate Tony Schwartzkopf for mental anguish, humiliation, embarrassment, and emotional injury.

C. For all other damages permissible under the ADA and PDA.

D. For an order enjoining GEO from engaging in the unlawful employment practices to which it subjected Tony Schwartzkopf, and other remedial action as may be appropriate, which may include, but is not limited to, reinstatement of Tony Schwartzkopf with back pay, and any other equitable relief as the court deems appropriate.

E. For an award of punitive damages.

F. For an award of reasonable attorneys' fees and the costs of this action.

G. For any other and further relief as this Court may deem just and proper.

DATED: June 17, 2019.

**MOLEVER CONELLY PLLC**

By:    s/ Chad Conelly / 022394
    Chad Conelly
    Attorneys for Plaintiff

## **CERTIFICATE OF FILING**

I certify that on June 17, 2019, I electronically filed this document with the Clerk's Office using the CM/ECF System for filing.

By:    s/ Chad Conelly